# IN THE COURT OF APPEALS OF IOWA

No. 18-0534
Filed August 15, 2018

**IN THE INTEREST OF M.Q. and C.Q.,**
**Minor Children,**

**C.Q., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Buena Vista County, Mary L. McCollum Timko, Associate Juvenile Judge.

A father appeals a juvenile court order terminating his parental rights to two children. **AFFIRMED.**

Andrew J. Smith of Mack, Hansen, Gadd, Armstrong & Brown, PC, Storm Lake, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kara L. Minnihan, Onawa, guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

"I haven't been a parent for my kids," Christian candidly testified at the hearing on the petition to terminate his parental relationship with his daughter, M.Q., and son, C.Q. But on appeal Christian challenges the juvenile court's conclusion he abandoned the children. He also contends termination of his parental rights is not in the children's best interests. The juvenile court concluded "Christian's actions are the epitome of the word abandonment." On our de novo review, we reach the same conclusion.[1] And given Christian's admitted methamphetamine addiction and criminal conduct, we conclude the children's safety and long-term nurturing and growth is best served by termination of his parental rights.

## I. Facts and Prior Proceedings

Christian's use of methamphetamine while caring for then nine-month-old M.Q. first brought this family to the attention of the Iowa Department of Human Services (DHS) in May 2016. Christian was living with M.Q.'s mother, Claudia.[2] The DHS later learned Christian's brother broke into the family's apartment looking for methamphetamine; Christian physically fought with his brother in M.Q.'s presence. After an initial investigation, the DHS instructed Claudia to keep M.Q. away from Christian until he underwent drug testing. The State believed Claudia,

---

[1] Our review is de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the juvenile court's factual findings, but we give them weight, especially when witness credibility is critical to the outcome. *See id.* Proof must be clear and convincing, meaning there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

[2] C.Q. had not yet been born.

who was pregnant with their second child, "loosely" followed the safety plan—living with her mother.

C.Q. was born in August 2016. Three months later, due to the family's continued instability, the juvenile court adjudicated M.Q. as a child in need of assistance (CINA). The court adjudicated C.Q. as a CINA in January 2017.

That same month, the court ordered Christian to complete a substance-abuse evaluation. The court allowed Christian to remain in the home with Claudia and the children but cautioned the arrangement would change if he continued using controlled substances. Christian successfully completed impatient treatment in March and engaged in outpatient treatment following his discharge. But one month later, Christian used methamphetamine and marijuana to celebrate his birthday.

In early May 2017, the DHS developed a new safety plan under which Claudia and the children would stay at a shelter. A short time later, Claudia and the children moved in with Christian's parents. Christian was expected to contact DHS to set up visits. Christian did not do so. While his family stayed at the shelter, Christian would stop by without contacting DHS and ask Claudia for money. Christian attempted to visit his parents' home on two occasions, but they turned him away because such contact was unauthorized. Then Christian stopped visiting all together. Claudia told workers she did not know his whereabouts until November when he pleaded guilty to being a felon in possession of a firearm and received a probationary sentence. Christian violated his probation and was in custody at the time of the termination hearing.

In December, the State filed a petition to terminate Christian's parental rights, citing Iowa Code section 232.116(1)(b), (e), and (h) (2017). The juvenile court held a hearing on the petition in January 2018. At the time of the hearing, M.Q. was seventeen months old and C.Q. was five months old. In his testimony, Christian admitted having no contact with his children since late April or early May 2017. He also admitted he had not provided financially or emotionally for his children—with the exception of a small contribution to buy a Christmas gift. But Christian asked the court not to terminate his parental rights, saying he needed "one more chance" to overcome his addiction and be a parent.

The juvenile court found clear and convincing evidence Christian had abandoned his children under the definition in section 232.116(1)(b).[3] The court found Christian had not maintained "significant and meaningful contact" with his children for more than ten months and had been "virtually nonexistent to them." The court noted Christian had demonstrated no effort to meet the responsibilities in the case permanency plan and made no genuine effort to maintain communication with his children. The court also found termination was in the children's best interests. Christian appeals.

## II.    Analysis

### A.  Abandonment

Abandonment means relinquishing "the parental rights, duties, or privileges inherent in the parent-child relationship." Iowa Code § 232.2(1). Proof of

---

[3] The court declined to terminate under paragraphs (e) and (h) based on finding no order changing custody of the children was entered until September 14, 2017, and thus the State did not offer clear and convincing evidence the children were "removed" for more than six months.

abandonment must include both the intention to abandon and the acts by which the intention is evidenced. *Id.* Christian contends the State did not present clear and convincing evidence he abandoned his children.[4] He claims the State did not prove his intent to relinquish his parenting responsibilities because he was "comfortable that his children were being appropriately taken care of because his parents were providing them a home."

Christian had no personal visits with the children during the ten months leading up to the termination hearing. He chose not to reengage with services after he relapsed but instead disappeared from his children's lives while he was "lost in drugs." He provided virtually no support for them during those months. And Christian faced five years of incarceration because of his probation violation. At the termination hearing, Christian acknowledged he had not been a parent to his children. Although Christian expressed a desire to have a relationship with his children, he took no steps to be an active part of their lives. His parents' contributions to the care of M.Q. and C.Q. do not erase Christian's own dereliction of parenting duties. Like the juvenile court, we conclude the State proved the elements of abandonment by clear and convincing evidence and affirm the termination of Christian's parental rights on that basis.

### B. Best Interests

Christian advances several reasons why termination of his parental rights is not in the children's best interests. First, he questions Claudia's ability to parent

---

[4] The State argues Christian did not preserve error on his statutory-grounds argument at the termination hearing. We conclude the testimony Christian gave at the hearing was sufficient to contest the State's proof of abandonment.

on her own.  Second, he claims he is the only parent who has shown the ability to maintain a job and financially provide for the children.  And third, his parents have provided support and terminating his rights would sever the children's relationship with their grandparents.

Our determination of best interests must track section 232.116(2).  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting court's use of an unstructured best-interests test).  That provision focuses on the child's safety; the best placement for furthering long-term nurturing and growth; and physical, mental, and emotional condition and needs.  *See* Iowa Code § 232.116(2).  The supreme court has held that a parent's serious addiction may prevent the parent from exercising those care-taking skills necessary to assure the children's safety.  *In re J.K.*, 495 N.W.2d 108, 113 (Iowa 1993).

We are not persuaded by Christian's reasoning.  Claudia's relative ability to serve as the children's caregiver is not relevant to our best-interest determination.  But even if it were relevant, the record shows Claudia is developing the ability to effectively parent by engaging with DHS.  Next, Christian's touting of his ability to provide financially for his family runs counter to the record; Christian rarely provided any financial support and testified any money he did earn went to buy drugs, not to support his children.  Lastly, although Claudia and her children received support from Christian's parents, the termination of Christian's parental rights does not prevent Claudia from continuing that relationship.

Christian's methamphetamine abuse and criminal conduct creates an unsafe environment for his children.  He hasn't provided for the physical, mental, and emotional needs of his children and hasn't shown he is capable of doing so.

Claudia remains the best placement for furthering the children's long-term nurturing and growth. She has generally demonstrated an ability to support the children through her own actions, state services, and assistance from the children's grandparents. Termination of Christian's parental rights is in the children's best interests.

**AFFIRMED.**